**KENTUCKY BAR ASSOCIATION, Movant,**

v.

**Paul H. TWEHUES, Jr., Respondent.**

**No. 92–SC–521–KB.**

Supreme Court of Kentucky.

March 18, 1993.

Ray Clooney, Kentucky Bar Ass'n, Frankfort, for complainant.

Martin J. Huelsmann, Ft. Mitchell, Paul H. Twehues, Jr., Newport, for respondent.

## OPINION AND ORDER

STEPHENS, Chief Justice.

This Court took review and on respondent's motion heard oral argument to consider recurring ethical questions in regard to the private practice of law by County Attorneys and Commonwealth's Attorneys, and when and in what circumstances they are required to withdraw from pending civil, criminal, or quasi-civil/criminal cases.

Respondent is County Attorney of Campbell County, Kentucky, and he has a staff of seven assistants. In September of 1989, he undertook the private representation of Lisa (Henry) Sanzere in a divorce case and it soon appeared that child custody would be bitterly contested. About one month after commencement of the divorce case, in October of 1989 a motion for temporary custody was heard in circuit court and at that hearing, the paternal grandmother testified to acts of neglect and abuse committed against the child by Ms. Sanzere, respondent's client. Despite this testimony, temporary custody was awarded to Ms. Sanzere, a fact from which one may infer that the circuit court found little credibility in the abuse and neglect testimony. Several months later, in July of 1990, while the divorce case was still pending, the paternal grandmother went to the Clerk of the Campbell District Court and obtained a juvenile petition alleging that the child was neglected and abused. Apparently, local practice permitted the clerk to issue such juvenile petitions, and neither the County Attorney's office nor any judge was consulted. The clerk testified, however, that by local practice, juvenile petitions were not issued when a circuit court action over child custody was known to be pending. The pendency of the divorce case was not revealed when the juvenile petition was obtained.

About three weeks later on August 22, 1990, the initial juvenile hearing was held

and appearing on behalf of the County Attorney's office was Mr. Monfort, an Assistant County Attorney. In the course of the hearing, the child's mother, the party against whom the neglect and abuse allegations had been made, informed the court that she was being represented by respondent in her divorce case. In response to this, the juvenile sessions judge said "... if Mr. Twehues is representing her in circuit court, then his office can't be prosecuting the case here in district court I don't believe." Mr. Monfort added, "I'm out. I can't prosecute it because I work for Paul." From other remarks by the court and counsel, it appears to have been clearly anticipated that the whole matter would be resolved in the circuit court, rendering the juvenile court case moot or subject to dismissal.

This juvenile case was next docketed on September 12, 1990, before Judge Lewis, a different judge than had presided on August 22. The transcript of this proceeding is brief and essentially shows that the mother, the party charged with abuse, was not present for medical reasons and no appearance is shown by respondent. Essentially all that happened was that the court and counsel for the child's father in the circuit court case agreed that the issues in the juvenile case would likely be resolved in circuit court, so the District Court determined to indefinitely postpone the case. However, shortly thereafter, when respondent was in Judge Lewis's office on an unrelated matter, Judge Lewis inquired of respondent as to the status of "the Henry case." Respondent replied that the case was set for final hearing on October 12, 1990.

Manifestly, respondent's answer as to the final hearing on October 12 referred to the divorce and custody case in circuit court which was indeed set for that date. Complainant contends, however, that the inquiry from Judge Lewis must have alerted respondent that some action relating to the Henry case was pending in the district court and this, it contends, was sufficient to require respondent to inquire further, and upon proper inquiry, withdraw from the divorce case. After the September 12, 1990, scheduled hearing, the trial court made a docket notation as follows: "Note from Dr. Gunn—that mother of child is medically unable to attend. May be resolved in circuit court as part of [an October] custody hearing ... Revive only if necessary." Thereafter, motions were filed in the circuit court divorce case which delayed its resolution from the intended October date. There is no evidence that respondent had any actual knowledge of the juvenile case prior to September 12, 1990.

From September 12, 1990, when respondent may have learned of the existence of the Henry juvenile court case, until December 5, 1990, he did not move to withdraw as counsel in the Henry divorce case and no special prosecutor was assigned to oversee the juvenile case. However, this does not appear to be the primary basis of the Board of Governors' findings of ethical misconduct. The Board appears to have held that respondent knew of a conflict almost a year earlier (October, 1989), long before the juvenile petition was filed, when allegations of abuse were first made against respondent's client in the temporary custody hearing, and that he then had a duty to withdraw.

■ The view of the Board of Governors on this point will not long detain us. We reject the notion that any criminal allegation of misconduct made against the civil client of a prosecutor, regardless of the evidence, requires the prosecutor to immediately withdraw from the representation. Such a rule would be subject to abuse and would effectively prohibit any private practice by prosecutors.

The more difficult issue here relates to respondent's action or inaction, from September 12, 1990, until the date of his withdrawal from the divorce case on December 5, 1990. After the Inquiry Tribunal reviewed the charge against respondent it determined that a private admonition should be given, but respondent refused to accept this contending that he was not guilty of any violation. A trial commissioner was appointed, testimony was taken, and the trial commissioner, albeit with great reluctance, found that from September 12,

1990, until the date of withdrawal, respondent possessed sufficient knowledge to enable a careful attorney to know he should withdraw from both cases. While we have rejected the Board of Governors' view that respondent should have withdrawn after the temporary custody hearing nearly a year earlier, and discovered some errors of fact in the Board's findings, the Board concurred with the commissioner with respect to the September 12, 1990—December, 1990, period and found that respondent's failure to withdraw amounted to a violation.

■ At the outset, this Court's view with respect to respondent's disqualification from the juvenile case should be made unmistakable. From the record, we are convinced that the trial judge disqualified respondent's office on August 22, 1990, and that it thereafter had no right or duty to act further on behalf of the Commonwealth. As to respondent's actions in the divorce case on and after September 12, 1990, we find considerable ambiguity and no evidence of intentional misconduct. It appears to have been the view of all participants that the divorce case would resolve the whole matter, as evidenced by the indefinite continuance with the acquiescence of the other counsel.

Under these circumstances, we are unable to find guilt based on an inference as to what respondent may have known. In *K.B.A. v. Lovelace*, Ky., 778 S.W.2d 651 (1989), this Court found misconduct based on the evidence that the prosecutor intentionally used his official position to gain an advantage in a civil case. The evidence here reveals no such misuse of official position.

While *Lovelace* is frequently cited in support of *per se* disqualification, it must be read in light of its factual context. We will not rigidly apply language from *Lovelace* to a wholly inapposite factual situation. From our review of the evidence, respondent's technical violation, if any, was unintentional and without any motive to gain an improper advantage or unethically benefit his client.

From the foregoing, we cannot accept the recommendation of the Board of Governors and the case is dismissed.

All concur.